(91 Misc. Rep. 212)

### In re PEARSALL'S ESTATE.

(Surrogate's Court, New York County.   June, 1915.)

1. WILLS ⬥⬥523—CONSTRUCTION—TENANTS IN COMMON.

Where a will gave testatrix's executors $30,000 in trust, to apply the income to the benefit of her nephew for life, and at his death gave the said $30,000 to two named legatees, children of a person named, share and share alike, such legatees took as tenants in common; the gift being to them nominatim, and not a gift to a class.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1115; Dec. Dig. ⬥⬥523.]

2. WILLS ⬥⬥630—CONSTRUCTION—VESTED INTEREST.

The interests of such legatees were vested, notwithstanding the use of the words "at his death," referring to the life tenant; such words not postponing the vesting of the remainder, but simply its enjoyment in possession.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. ⬥⬥630.]

3. WILLS ⬥⬥487—CONSTRUCTION—PAROL EVIDENCE.

Parol evidence of declarations of testatrix were inadmissible in proceedings to construe her will, where the language of the will was not ambiguous.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. ⬥⬥487.]

In the matter of the estate of Phebe Pearsall, deceased. Proceeding for the construction of testatrix's will. Decreed according to opinion.

Winston H. Hagen, of New York City, for petitioner and trustee.

Lannon & Bailey, of New York City, for administratrices of Thomas R. Pearsall.

Cravath & Henderson, of New York City, for respondents Field.

COHALAN, S. Upon this accounting the will of the above-named testatrix is before the court for construction. By the tenth paragraph thereof the testatrix provided as follows:

"X. I give and bequeath to my executor or executors the sum of thirty thousand dollars in trust, the income thereof to be applied to the sole use and benefit of my nephew, Nathaniel Coles Pearsall, during his life, and at his death I give and bequeath the said sum of thirty thousand dollars to Thomas Pearsall and Helen Pearsall, children of James B. Pearsall, share and share alike. In case the said Nathaniel Coles Pearsall shall not survive me, I give and bequeath the said sum of thirty thousand dollars to the said Thomas Pearsall and Helen Pearsall, share and share alike."

The testatrix died July 9, 1895. The life tenant, Nathaniel Coles Pearsall, survived the testatrix and died April 24, 1913. Helen Pearsall, one of the remaindermen mentioned in the above-quoted paragraph, predeceased the testatrix, having died on the 8th day of October, 1887, unmarried and without issue. Thomas Pearsall, the other remainderman, survived the testatrix, but predeceased the life tenant, having died on October 26, 1897. He left him surviving a widow, Cora B. Pearsall, and an only child Phebe Pearsall, a great-grandniece

of the testatrix, both of whom are now living and are administratrices of the goods, chattels, and credits of the said Thomas Pearsall, deceased. They constitute one side in this proceeding. The residuary clause in the will named the testatrix's sister, Mary Bradhurst, as her residuary legatee, and in case of her predecease then the testatrix's niece, Frances P. Field. Mary Bradhurst died shortly after the date of the execution of the will, and the testatrix executed a codicil bequeathing the residue in trust to Frances P. Field for life, and at her death to her issue then surviving her, per stirpes and not per capita. Frances P. Field died July 21, 1907, leaving as her sole issue then surviving her children, August B. Field, Thos. P. Field, Maunsell B. Field, and Mary F. Payne, and one grandson, Edward P. Field, the son of a deceased child. Maunsell B. Field, by deed of trust dated December 30, 1903, transferred his interest in the estate of the testatrix to trustees to apply the net income to his use, and at his death to transfer the principal to his testamentary appointees. August B. Field and Thomas P. Field are the sole acting trustees under said deed of trust. These aforesaid residuary legatees represent the other side of this proceeding.

The administratices of the estate of Thomas Pearsall claim that upon the death of the life tenant they became entitled to the whole fund, which, upon the death of the testatrix, had vested in their intestate, Thomas Pearsall, as the survivor of the *class* described in the will as "children of James B. Pearsall." The residuary legatees contend that there is no gift by paragraph 10 of the will of the remainder to a class, but that the gift was to Helen and Thomas individually, as tenants in common, and that, by their having predeceased the testatrix and the life tenant, respectively, the shares which they would have received if they had survived have lapsed and fallen into the residue.

[1] The contention of the administratrices that the legacy of the remainder contained in paragraph 10 is a legacy to a class is based upon the use of the phrase "children of James B. Pearsall," as being antagonistic to a gift to Thomas and Helen individually; but this does not appear to be so. Throughout the whole will the testatrix describes her beneficiaries by relationship, in addition to the recital of their names, as "my sister, Mary Bradhurst," "my niece, Frances Pearsall Coles," "my nephew, James B. Pearsall," etc., for the purpose of more particular identification. The phrase "children of James B. Pearsall" is merely descriptive. The gift is to them nominatim, "share and share alike," and this language has a settled judicial construction as creating a tenancy in common, and not a gift to a class. Moffett v. Elmendorf, 152 N. Y. 475, 46 N. E. 845, 57 Am. St. Rep. 529; Savage v. Burnham, 17 N. Y. 561; Matter of King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945. Furthermore, as against the proposition that the testator intended by paragraph 10 to create a gift to a class, with the consequent right of survivorship, the will in two instances discloses that the testatrix was aware of the possibility that one or more of a group of legatees might predecease the

effective date of the gifts, and, where she intended the bequests to go ultimately to the survivors, so indicated, and thereby provided against any consequent lapse by directing that the share they would have taken, had they survived, should go to "their respective lawful issue" (paragraph 11 of the will), or "shall go to the survivors of them, share and share alike" (paragraph 17 of the will), and expressly included in the residue of her estate "all devises and bequests in said will and this codicil which may have lapsed" (paragraph 7 of the codicil).

The case of Hoppock v. Tucker, 59 N. Y. 202, relied upon by the administratrices to show a gift to a class, is not in point; the decision in that case being based not upon mere language, which, if taken alone, would be construed as a *bequest to the persons named,* but upon the intent of the maker of the will, as gathered from the general scheme of the whole will. In that case there was a uniformity of distribution. The testator divided his residuary estate into substantially six parts, corresponding to the number of his children, and the court held that it was apparent that the testator intended to divide his entire estate amongst his children or the issue of any deceased children per stirpes, and that there was an intent to create a gift to a class, gathered from all the circumstances of the will. Is it so with the will now before me for interpretation? I think not.

The testatrix had no children, being unmarried, and the will provides for bequests to relatives and certain charities. It is not based upon any impartial or uniform scheme of distribution. On the contrary, the bequests are of varying amounts and arbitrary in character. There is no connection or proportion between the amounts of the bequests and the "roots" or stocks of her family, for by paragraphs 12 and 13 of the will she gave James C. Norton and Harry Norton, grandsons of her sister, Clara P. Norton, $55,000, and she gave Frances P. Coles, Nathaniel Coles Pearsall, and James B. Pearsall, the children of Thomas Pearsall, her brother, together with Helen and Thomas, the children of Thomas B. Pearsall, $150,000. By paragraph 7 she gave Frances P. Field, her niece, the bulk of her fortune, amounting to several hundred thousand dollars, and gave her sisters and brothers $20,000 apiece. I therefore hold that the legacies to Thomas and Helen Pearsall of the remainder interest, contained in the tenth paragraph of the will, are legacies to them individually as tenants in common, and that the words "children of James B. Pearsall" are merely descriptive.

It is well settled that at common law a legacy does not vest in the legatee until the death of the testator, and should the legatee predecease the testator the legacy lapses and becomes part of the residuary. Savage v. Burnham, 17 N. Y. 561; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945; Moffett v. Elmendorf, 152 N. Y. 475, 46 N. E. 845, 57 Am. St. Rep. 529. Helen Thompson does not come within the exception created by statute (Decedent Estate Law, § 29, as amended by Laws 1912, c. 384), saving from extinguishment a legacy bequeathed to a child or other descendant of a testator, or a brother or sister of a testator dying during the lifetime of the latter, leaving a child or other descendant who shall survive such testator, and by

her death prior to that of the testatrix her legacy lapsed and became part of the residuary.

[2] The next question to be determined is whether the remaining interest of Thomas is vested or contingent. As to that, I hold his interest vested. The use of the words "at his death," referring to the life tenant, did not postpone the vesting of the remainder, but simply its enjoyment in possession. It has been repeatedly held that adverbs of time, such as "when," "then," "after," "from and after," in the gift of a remainder limited upon a life estate, are to be construed as indicative of the time of enjoyment, and not the vesting of the estate. Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20. See, also, Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890, "from and after her decease"; Livingston v. Green, 52 N. Y. 118, "from and after the decease and death of"; Ackerman v. Gorton, 67 N. Y. 63, "from and immediately after her decease"; Matter of Young, 145 N. Y. 535, 40 N. E. 226; Estate of Tapley, 88 Misc. Rep. 393, 151 N. Y. Supp. 951. The words "at his death" (referring to the life tenant) used in this will before me are not as strong an indication of the creation of a remainder estate to vest only upon the death of the life tenant as the words "from and after the decease and death of," construed by the cases supra. It therefore follows that Thomas Pearsall, upon the death of the testatrix, took a vested remainder in one moiety of the trust fund, and that upon his death his interest passed to the representatives of his estate.

[3] It was claimed by the administratrices that paragraph 10 of the will is equivocal and ambiguous, and that extrinsic evidence would be admissible to ascertain the intent of the testatrix. Upon the trial of this proceeding parol evidence as to the intention of the testatrix was given. A motion to strike out this testimony was made, and the decision thereon reserved. The motion to strike out the testimony as to the declarations of intention of the testatrix is now granted. Testimony as to declarations of a testator are inadmissible, except to explain a latent ambiguity or rebut a resulting trust. Reynolds v. Robinson, 82 N. Y. 103, 37 Am. Rep. 555; Williams v. Freeman, 83 N. Y. 561. Courts cannot make a new will by the admission of extrinsic parol evidence of declarations, nor prove possible motive, where the words and language of the will are not ambiguous, or, at any rate, have a fixed and settled construction. Technical legal phrases, the meaning of which has been settled by judicial construction, are deemed to be clear and unambiguous. Matter of Wells, 113 N. Y. 396, 21 N. E. 137, 10 Am. St. Rep. 457; Kerr v. Bryan, 32 Hun, 51, affirmed 102 N. Y. 665.

The intention of the testatrix must be ascertained from the language and context of the will itself, and evidence dehors the instrument to explain or contradict it is inadmissible. Williams v. Freeman, supra; Kelly v. Kelly, 61 N. Y. 51; Van Nostrand v. Moore, 52 N. Y. 18. And where the language itself is perhaps ambiguous, but by reason of its being the subject of frequent construction and interpretation by the courts it has come to have a fixed and definite meaning, it must be interpreted in the light of the decisions. It is not uncertain or doubtful (Kerr v. Bryan, supra), and parol evidence to explain

it is unnecessary. The rule that, where a will directs an aggregate fund to be divided among individuals by *name, share and share alike,* with an additional description as to relationship, but with no words *necessarily* pointing to a class, they take as tenants in common seems to be well settled. Savage v. Burnham, 17 N. Y. 561; Marsh v. Consumers' Park Brew. Co., 162 App. Div. 256, 147 N. Y. Supp. 695; Moffett v. Elmendorf, 82 Hun, 470, 31 N. Y. Supp. 726, affirmed 152 N. Y. 475, 46 N. E. 845, 57 Am. St. Rep. 529.

Decreed accordingly.